

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JRS/MRG/GN
F. #2018R01858

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 24, 2023

<u>By ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Tyshawn Corbett
     <u>Criminal Docket No. 20-213 (KAM)</u>

Dear Judge Matsumoto:

  The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is currently scheduled for August 7, 2023 at 11:00 a.m. For the reasons set forth below, the government submits that a sentence of 35 years' imprisonment is appropriate in this case.

I. <u>Background</u>

  A. <u>The Instant Offense</u>

  The defendant is longtime member of the Elite Assassin Milla ("E.A.M."). <u>See</u> Presentence Investigation Report ("PSR") ¶ 7. As a member of E.A.M., the defendant committed and was involved in numerous shootings and acts of violence, many of which were detailed in the testimony of cooperating witnesses at the trial in <u>United States v. Smothers</u>, No. 20-CR-213 (KAM). <u>See, e.g.</u>, Trial Tr. 375-384 (describing a shooting involving the defendant); <u>id.</u> at 385-388 (additional shooting involving the defendant); <u>id.</u> at 405-409, 428-432 (additional shooting involving the defendant); <u>id.</u> at 485-488 (discussing the defendant's murder of Michael Tenorio, also known as "Nitty"); <u>id.</u> at 582-585 (discussing the defendant's first shooting of John Doe #1, also known as "Premo"); <u>id.</u> at 586-590 (discussing the defendant's attempted shooting of John Doe #2, also known as "Fresh"); <u>see also</u> PSR ¶ 33. Even within E.A.M. — an

extraordinarily violent gang — the defendant was known as a "shooter."[1] Trial Tr. 476. Indeed, at times the defendant bemoaned that he was the only person in E.A.M. who was engaging in enough shootings. See Trial Tr. 652 ("Tyshawn felt that he was the only one in the hood putting in work. He was the only shooting stuff, like, shooting people.").[2]

In addition to this violence, the defendant was heavily involved in E.A.M.'s other criminal activity. For a time, the defendant was one of the most successful and high-earning crack cocaine dealers in his area of East New York. See Trial Tr. 388-390 (explaining that the defendant "was getting more money than everybody in [the] neighborhood" from selling crack). The defendant was also the most successful fraudster within E.A.M. See Trial Tr. 576-77. He repeatedly possessed firearms in furtherance of his crimes, including in January 2019, when he was arrested with a firearm and charged in a separate federal case, for which he is pending sentencing. See United States v. Corbett, No. 19-CR-46 (ENV); see also PSR ¶ 40.

The defendant has pleaded guilty to three shootings: the murder of Michael Tenorio and two shootings of John Doe #1, also known as Premo. All three shootings were in retaliation for the 2015 murder of Jonathan Thomas, also known as "Black," a member of E.A.M. See PSR ¶¶ 19-21. Although many members of E.A.M. were angry about the murder of Thomas, the defendant was the most "gung-ho" for the plan to take revenge on the persons responsible for Black's death. Trial Tr. 483. The defendant spent years plotting these shootings, including an extensive plot to stalk John Doe #1 after he survived the first shooting and then shooting John Doe #1 a second time, leaving him paralyzed. See PSR ¶¶ 21-31. The second shooting of John Doe #1 (as well as the shooting of John Doe #2), occurred while the defendant was on probation for earlier drug and fraud convictions. See PSR ¶¶ 61-62, 65.

B. Procedural History

The defendant was indicted for racketeering, violent crime in-aid-of racketeering offenses and firearm offenses, among others, on June 18, 2020. See ECF Dkt. No. 1.

---

[1] "[S]hooter is a phrase that we use to -- to identify somebody that, somebody that shoot guns, somebody that shoot people. You get respect because they see you as a violent person." Trial Tr. 352.

[2] The Court may consider as part of the defendant's sentencing the testimony from the trial of Quandel Smothers, with which this Court is well familiar. See United States v. Carmona, 873 F.2d 569, 574 (2d Cir. 1989) (court properly relied on cooperator's trial testimony at sentencing for defendant who had not been part of trial; "It is not a denial of due process for the trial judge, when determining sentence, to rely on evidence given by witnesses whom the defendant could neither confront nor cross-examine."); see also United States v. Garcia, 167 F. App'x 259, 260-61 (2d Cir. 2006) (rejecting argument that "the district court improperly considered at sentencing the hearsay testimony of a cooperating witness who testified at the trial of Garcia's co-defendants, in violation of the Confrontation Clause of the Sixth Amendment"); United States v. Agyeman, 63 F. App'x 544, 546 (2d Cir. 2003) ("Judge Chin properly relied on his own knowledge of the extensive record in the trial of Agyeman's co-defendants, at which he presided.").

The defendant was initially scheduled to plead guilty on June 16, 2022, but he refused to appear for his guilty plea hearing.  See ECF Dkt. Entry dated June 16, 2022.  When the hearing was rescheduled on June 24, 2022, the defendant asked for more time to consider the plea offer.  See ECF Dkt. Entries dated June 24, 2022.  The defendant appeared for a third scheduled hearing on June 29, 2022, at which time he refused the government's then-existing plea offer.  See ECF Dkt. Entry dated June 29, 2022.  On September 6, 2022, after the government had begun trial preparation, the defendant pleaded guilty to Counts 4, 8 and 15 of the Indictment, each charging a discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(C)(1)(A)(iii).  See ECF Dkt. No. 225.

        C.        The Defendant's Ongoing Conduct

The defendant's criminal activity did not stop after his arrest in this case or even after his guilty plea.  For example, the defendant has persistently used contraband phones within the Metropolitan Detention Center (the "MDC"), including to operate an Instagram account under the name "omni_ty."  A screenshot of the profile picture (of the defendant) and biographical information for this Instagram page is shown below.



As the Court is aware, while the trial in United States v. Smothers was ongoing, co-defendant Qawon Allen, also known as "40," began posting copies of the transcript of the testimony of government witness John Warren in an effort to retaliate against him for his cooperation with the government.  When Allen was sent to the Special Housing Unit in connection with this conduct, the defendant took to Instagram on February 2, 2023 to support Allen and to further attempt to retaliate against the government's witnesses, stating "SO 40 [Allen] IS IN THE BOX [the Special Housing Unit] FOR POSTING THIS RAT SMILEZ [Warren] PAPERWORK PHAZE [government witness Andrew Campbell] A RAT TOO."  A screenshot of this post is below.



II.      Victim Impact and Restitution

Because the defendant pleaded guilty only to violations of 18 U.S.C. § 924, the defendant is not subject to restitution. See PSR ¶ 46. Law enforcement has attempted to contact John Doe #1, but has not been successful, and law enforcement has no contact information for John Doe #2.[3] The government has been in contact with the family of Michael Tenorio and has explained to them their right to be heard at sentencing or in a submission in advance of sentencing. If the government receives any submission from the Tenorio family in advance of sentencing, it will seek leave to docket that submission with the Court under seal.

II.      Guidelines Calculation

As a result of the structure of the defendant's plea agreement, under which he pleaded to three violations of 18 U.S.C. § 924(c)(1)(A)(iii), the defendant's United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of imprisonment is 30 years. See PSR ¶¶ 49-52, 99.

Although the government submits that 30 years is the correct Guidelines range, the government also calculates below what the Guidelines range would be for the conduct

---

[3] Neither John Doe #1 nor John Doe #2 have ever been cooperative with law enforcement's investigation into their shootings.

underlying the defendant's § 924(c) convictions, which the government submits is a useful point of reference. As set forth below, the defendant's Guidelines offense level for that underlying conduct would have been 43, which would have yielded a Guidelines range of life imprisonment.

Murder of Michael Tenorio

| | |
|---|---|
| Base Offense Level (U.S.S.G. §§ 2E1.3(a)(2), 2A1.1) | 43 |
| Total: | 43 |

First Shooting of John Doe #1

| | |
|---|---|
| Base Offense Level (U.S.S.G. §§ 2E1.3(a)(2), 2A2.1(a)(1)) | 33 |
| Plus: Life-Threatening bodily injury (U.S.S.G. § 2A2.1(b)(1)(A)) | +4 |
| Total: | 37 |

First Shooting of John Doe #1

| | |
|---|---|
| Base Offense Level (U.S.S.G. §§ 2E1.3(a)(2), 2A2.1(a)(1)) | 33 |
| Plus: Life-Threatening bodily injury (U.S.S.G. § 2A2.1(b)(1)(A)) | +4 |
| Total: | 37 |

Grouping Analysis (§§ 3D1.1 - 3D1.4)

Highest Adjusted Offense Level: 43

| | | Level | Units |
|---|---|---|---|
| Group 1: | Tenorio Murder | 43 | 1 unit |
| Group 2: | 1st John Doe #1 Shooting | 37 | 1/2 unit |
| Group 3: | 2nd John Doe #1 Shooting | 37 | 1/2 unit |

| | |
|---|---|
| Total Units: | 2 units |
| Plus: 2 Levels (U.S.S.G. § 3D1.4) | +2 |
| Less: Acceptance of Responsibility (U.S.S.G. § 3E1.1(a)) | -2 |
| Total: | 43 |

III.     Argument

The government submits that a sentence of 35 years' imprisonment is sufficient, but not greater than necessary, to achieve Section 3553(a)'s purposes. Such a sentence, which would be equal to the appellate-waiver cap set forth in the defendant's plea agreement, appropriately balances the extraordinary gravity of the defendant's conduct, the need for deterrence and the need to protect the community from the defendant with the benefits of finality for the defendant's victims and their families.

A 35-year sentence would also avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553(a)(6). Guilty pleas to murder are relatively rare, but sentences in this courthouse from recent years for defendants who have pleaded guilty to such conduct generally cluster around 35 years. See United States v. Shelton, No. 18-CR-609 (HG) (E.D.N.Y. June 9, 2023), ECF Dkt. No. 664 (37 year sentence for defendant who orchestrated a murder and several attempted murders); United States v. Liburd, No. 17-CR-296 (ERK) (E.D.N.Y. Dec. 8, 2021), ECF Dkt. No. 360 (32 year sentence for defendant who pleaded guilty to racketeering conspiracy involving one murder and a separate murder conspiracy); see also United States v. Leiva and Rivas, No. 18-CR-398 (RPK), ECF Minute Entry dated July 17, 2023 (guilty pleas to murder by two defendants with Rule 11(c)(1)(C) agreements agreeing to terms of imprisonment of 35 years).

In the defendant's sentencing memorandum (ECF Dkt. No. 359 ("Def. Mem.")), the defendant expresses no remorse for his actions and primarily argues that his conduct is the result of his life circumstances. The government does not dispute the serious social ills discussed in the defendant's memorandum. The government submits, however, that the defendant's arguments are unpersuasive for three reasons.

First, those arguments ignore the reality that the vast majority of people who grow up in East New York do not join violent gangs and do not commit any serious crimes at all. Even among those who engage in criminal activity, few reach the level of the defendant, who committed at least half a dozen shootings, leaving one man dead and another paralyzed. Many people endure the difficult circumstances that the defendant endured, but very few respond the way that he responded, with callous and repeated violence.

Second, the defendant glosses over the fact that part of the reason places like East New York can be such difficult places to live is because of men like the defendant and gangs like E.A.M. The defendant also fails to consider those who suffer most as a result of his conduct — the community of East New York. Rather, the defendant states, "In these environments unfairly defined by violence, both children and parents become accustomed to the pop and bang of gunfire." Def. Mem. 4. In so many instances, it was the defendant and his fellow gang members who were forcing parents and children to live in fear of gun violence. See, e.g., Trial Tr. 407-408 (defendant engaged in a shootout outside of a party); id. at 381 (describing a second shootout committed by the defendant in "broad day . . . light outside" with many "people walking around"); id. at 586, 588-589 (describing a third shootout committed by the defendant in a crowded area during a neighborhood celebration). There is no merit to the defendant's claims that the havoc he and other gang members have wrought in the community should weigh in his favor.

6

Third, the defendant discusses many ways in which society has failed the people of East New York. And any such failures warrant scrutiny. But one of the worst failings — which goes wholly unmentioned by the defendant — would be to fail to provide the people of communities like East New York with the equal protection of the law to which they are entitled. No one is served — certainly not the law-abiding citizens of East New York — if perpetrators who harm the community are not fully held to account for their actions. Innocent people cannot be left to live in fear that they will be victimized or subject to haphazard shootouts in crowded streets, like those the defendant himself repeatedly participated in, with no appropriate recourse from our law.

The conditions of East New York do not mitigate the defendant's conduct; they show exactly why a serious sentence is necessary to protect the community from those, like the defendant, who have done its residents so much harm. The government therefore respectfully submits that the Court should impose a 35 year sentence.

V. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing, see 18 U.SC. § 3553(a)(2), which, in this case, is 35 years' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Jonathan Siegel
Matthew R. Galeotti
Genny Ngai
Assistant U.S. Attorneys
718-254-6293

cc: Clerk of the Court (KAM) (by ECF)
Kenneth Montgomery, Esq. (by ECF)
Anthony Cecutti, Esq. (by ECF)
Jennifer Fisher, Supervisory United States Probation Officer (by e-mail)